Sandra L. Lyons (AZ #010781)
John T. Giannopoulos (UT # 7209)
National Labor Relations Board, Region 28
2600 N. Central Avenue, Suite 1400
Phoenix, Arizona 85004
Tel: (602) 640-2133
Fax: (602) 640-2178
Email: sandra.lyons@nlrb.gov

Attorneys for Petitioner

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| **CORNELE A. OVERSTREET, Regional Director of the Twenty-Eighth Region of the National Labor Relations Board, for and on behalf of the National Labor Relations Board,**<br><br>Petitioner,<br><br>v.<br><br>**FARM FRESH COMPANY TARGET ONE, LLC,**<br><br>Respondent. | **Case No.**<br><br>**PETITION FOR TEMPORARY INJUNCTION UNDER SECTION 10(j) OF THE NATIONAL LABOR RELATIONS ACT, AS AMENDED [29 U.S.C. § 160(j)]**<br><br>**(Oral Argument Requested)** |

Cornele A. Overstreet, Regional Director of Region 28 (the Regional Director) of the National Labor Relations Board (the Board), petitions this Court, for and on behalf of the Board, pursuant to Section 10(j) of the National Labor Relations Act, as amended [61 Stat. 149; 73 Stat. 544; 29 U.S.C. § 160(j)] (the Act), for appropriate injunctive relief pending the final disposition of the matters involved herein pending a decision by the Board, on a complaint issued by the Acting General Counsel (General Counsel) of

the Board, alleging, inter alia, that Respondent has engaged in, and is engaging in, acts and conduct in violation of Section 8(a)(1) and (3) of the Act [29 U.S.C. § 158(a)(1) and (3)]. In support of this petition, Petitioner respectfully shows as follows:

1. Petitioner is the Regional Director for Region 28 of the Board, an agency of the United States, and files this petition for and on behalf of the Board.

2. Jurisdiction of this Court is invoked pursuant to Section 10(j) of the Act.

3. On March 15, 2013, the United Food and Commercial Workers Union, Local No. 99 (the Union), filed a charge with the Board, in Case 28-CA-100434, alleging, inter alia, that Farm Fresh Company Target One, LLC (Respondent) has engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(a)(1) and (3) of the Act. (A copy of this charge is attached as PX 11).[1]

4. (a) The aforesaid charge was referred to Petitioner as Regional Director for Region 28 of the Board.

(b) Upon the charge described above in paragraph 3, and after investigation of the charge in which Respondent was given the opportunity to present evidence and legal argument, the General Counsel, on behalf of the Board, pursuant to Section 10(b) of the Act [29 U.S.C. § 160(b)], issued a Complaint and Notice of

---

[1] Petitioner has filed evidence in support of this Petition, contained within an Appendix of Exhibits, which includes affidavits, official Board documents, along with the transcripts and hearing exhibits introduced into evidence in the underlying administrative hearing. References to the Appendix of Exhibits will be designated as "PX" followed by the appropriate exhibit number, and, as appropriate, the page and line number(s) of the respective exhibit. All exhibits and affidavits within the Appendix have been consecutively numbered at the lower right corner of each page. When first cited, affidavits are identified as "Affidavit of [name of affiant]," followed by the respective PX number; subsequent references to affidavits are designated by the affiant's name and the corresponding exhibit: page number.

2

Hearing on May 10, 2013 (Complaint), alleging that Respondent engaged in, and is engaging in, unfair labor practices as charged within the meaning of Section 8(a)(1) and (3) of the Act.  (A copy the Complaint is attached as PX 13).

   (c) On May 24, 2013, Respondent filed its Answer to the Complaint (Answer), denying the commission of any unfair labor practices.  (A copy of Respondent's Answer is attached as PX 15).

   (d) On June 5, 2013, the General Counsel filed an Amendment to the Complaint, alleging the facts supporting the Board's jurisdictional standards over Respondent, and further alleging that discharges of the five employees in question constituted independent violations of both Section 8(a)(1) and Section 8(a)(3) of the Act.  (A copy of the Amendment to the Complaint is attached as PX 16).

   (e) On June 10, 2013, Respondent filed its Amended Answer denying the commission of any unfair labor practices.  (A copy of Respondent's Amended Answer is attached as PX 18).

   (f) On June 19, 2013, Respondent filed its Answer to Amended Complaint, denying the commission of any unfair labor practices.  (A copy of Respondent's Answer to Amended Complaint is attached as PX 19).

   (g) A hearing before Board administrative law judge Geoffrey Carter (ALJ Carter) took place on June 11 through June 14, at the hearing room of Region 28 of the Board, located in Phoenix, Arizona (the Hearing).  (PX 1 - 4).

   (h) ALJ Carter issued his decision on August 8, 2013 (PX 8), finding that Respondent:  (1)  discharged Maria Morales on March 5 in violation of Section

3

8(a)(1) of the Act; (2) discharged Martha Aguirre, Sylvia Romero and Roberto Pena (on March 6 for Aguirre and Romero, and on March 13 for Pena), in violation of Section 8(a)(3) and (1) of the Act; (3) interrogated Roberto Pena and Blas Virelas on or about March 6, about their union membership, activities and sympathies, in violation of Section 8(a)(1) of the Act; (4) on or about March 6, threatened to discharge employees because they signed union authorization cards, in violation of Section 8(a)(1) of the Act; (5) on or about March 6, threatened to refuse to assist employees if they supported the Union, in violation of Section 8(a)(1) of the Act; (6) on or about March 6, created an impression among employees that Respondent had their union activities under surveillance, in violation of Section 8(a)(1) of the Act; (7) on or about March 14–15, engaged in surveillance of employees' union activities in a manner that was out of the ordinary and coercive, in violation of Section 8(a)(1) of the Act; and (8) on or about mid-March, threatened employees that they could be permanently replaced if they supported the Union and went on strike (regardless of the reason for the strike), in violation of Section 8(a)(1) of the Act.

5. There is reasonable cause to believe that the allegations set forth in the Complaint, as further described below, are true and that Respondent has engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(a)(1) and (3) of the Act, affecting commerce within the meaning of Section 2(6) and (7) of the Act for which a remedy will be ordered by the Board, but that the Board's order for such remedy will be frustrated without the temporary injunctive relief sought herein. Petitioner asserts that there is a substantial likelihood of success in prevailing in the

4

underlying administrative proceedings and establishing that Respondent has engaged in, and is engaging in, unfair labor practices in violation of Section 8(a)(1) and (3) of the Act by, inter alia, interrogating its employees about their Union activities; threatening its employees with discharge; threatening to refuse to assist employees if they engaged in Union and concerted activities; creating an impression among its employees that their Union and concerted activities are under surveillance, and engaging in surveillance of employees' Union and concerted activities;  and discharging four employees because they engaged in concerted and/or Union activities.  In support thereof, and of the request for temporary injunctive relief, Petitioner, upon information and belief, shows as follows:

   (a) At all material times Respondent has been a limited liability company with an office and place of business in Phoenix, Arizona, herein called Respondent's facility, and has been engaged in the business of processing and packaging fresh produce for sale in retail stores.

   (b) In conducting its operations during the 12-month period ending March 15, 2013, Respondent sold and shipped from the Respondent's facility goods valued in excess of $50,000 directly from points outside the State of Arizona.

   (c) Based on a projection of its operations since about March 1, 2013, at which time Respondent commenced its operations, Respondent will purchase and receive at its Phoenix, Arizona facility, goods valued in excess of $50,000 from enterprises that are located within the State of Arizona, but receive the goods directly from points outside the State of Arizona.

(d) About February 28, 2013, Respondent purchased the business of Farm Fresh Company, Inc., (d/b/a Farm Fresh or Farm Fresh Company (Farm Fresh), and since then has continued to operate the business of Farm Fresh in basically unchanged form, and has employed as a majority of its employees individuals who were previously employees of Farm Fresh.

(e) Based on its operations described above in paragraph 2(d), Respondent has continued the employing entity and is a successor to Farm Fresh.

(f) At all material times, Respondent has been an employer engaged in commerce within the meaning of Section 2(2), (6) and (7) of the Act [29 U.S.C. § 152(2), (6) and (7)] and has been conducting and transacting business in this judicial district.

(g) At all material times, the Union has been a labor organization within the meaning of Section 2(5) of the Act [29 U.S.C. § 152(5)].

(h) At all material times, the following individuals held the positions set forth opposite their respective names and have been supervisors of Respondent within the meaning of Section 2(11) of the Act [29 U.S.C. § 152(11)] and agents of Respondent within the meaning of Section 2(13) of the Act [29 U.S.C. § 152(13)]:

| | | |
|---|---|---|
| Gary Schrum | - | Owner/ General Manager |
| Arturo Sousa | - | Operations Manager |
| Jesus "Martin" Loya | - | Production Supervisor |

(i) Since about February 16, 2013, Respondent's employees, including Martha Aguirre, Maria Morales, Silvia Romero, and Roberto Pena,, concertedly complained to Respondent regarding the wages, hours and working conditions of

6

Respondent's employees by protesting about unreasonable work assignments, unreasonable work locations, verbal abuse by Respondent's supervisors, and by making other concerted complaints.

        (j)      About March 6, 2013, Respondent, by Jesus "Martin" Loya (Loya), at Respondent's facility:

            (1)      interrogated its employees about their union membership, activities, and sympathies; and

            (2)      by telling employees it knew they had signed union authorization cards, created an impression among its employees that their union activities were under surveillance by Respondent.

        (k)      About March 8, 2013, Respondent, at Respondent's facility, by Loya:

            (1)      by telling employees it knew they had signed union authorization cards, created an impression among its employees that their union activities were under surveillance by Respondent;

            (2)      threatened its employees with discharge because they had signed union authorization cards; and

            (3)      threatened to refuse to assist employees because they had signed union authorization cards.

        (l)      About March 15, 2013, Respondent, by Loya, at Respondent's facility, engaged in surveillance of employees engaged in union and concerted activities.

(m) About March 26, 2013, Respondent, at Respondent's facility, by Schrum, threatened its employees with discharge if they selected the union as their collective bargaining representative.

(n) About the dates set forth opposite their names, Respondent discharged the employees named below:

(1) Robert Pena   - March 5, 2013
(2) Silvia Romero  - March 6, 2013
(3) Martha Aguirre - March 6, 2013
(4) Maria Morales  - March 6, 2013

(o) Respondent engaged in the conduct described above in paragraphs (m) and (n) because the named employees of Respondent engaged in the conduct described above in paragraph (i), and to discourage employees from engaging in these activities.

(p) Respondent engaged in the conduct described above in paragraphs (m), and (n)(1) through (n)(3) because the named employees formed, joined, or assisted the Union and to discourage employees from engaging in these activities.

(q) By the conduct described above in paragraphs (i) through (n), Respondent has been interfering with, restraining, and coercing employees in the exercise of the rights guaranteed in Section 7 of the Act in violation of Section 8(a)(1) of the Act.

(r) By the conduct described above in paragraphs (n)(1) through (n)(3), and (p), Respondent has been discriminating in regard to the hire or tenure or terms or conditions of employment of its employees, thereby discouraging membership in a labor organization in violation of Section 8(a)(1) and (3) of the Act.

        (s)       The unfair labor practices of Respondent described above affect commerce within the meaning of Section 2(6) and (7) of the Act.

        (t)       Certain of the unfair labor practices of Respondent described above have taken place within this judicial district.

6.      Respondent's unfair labor practices, described above in paragraph 5, have irreparably harmed, and are continuing to harm, employees of Respondent in the exercise of rights guaranteed them by Section 7 of the Act [29 U.S.C. § 157].  More specifically, Respondent's unfair labor practices have caused the following harm:

        (a)       Respondent's employees have suffered significant economic harm through the loss of work hours, and loss of pay and livelihood as a result of their unlawful discharges due to their concerted and Union activities;

        (b)       Respondent's unfair labor practices have deprived its employees of the right to freely choose whether they wish to be represented by the Union, thereby depriving employees of the benefits of representation by a union of their choosing; and

        (c)       Respondent's unfair labor practices have created an atmosphere wherein employees fear retaliation and discharge by Respondent on an ongoing and daily basis if they engage in concerted and Union activities or if they continue to show support for the Union.

7.      Upon information and belief, unless injunctive relief is immediately obtained, it can fairly be anticipated that employees will permanently and irreversibly lose the benefits of the Board's processes and the exercise of statutory rights for the

9

entire period required for Board adjudication, a harm which cannot be remedied in due course by the Board.

      8.     There is no adequate remedy at law for the irreparable harm being caused by Respondent's unfair labor practices, as described above in paragraph 5.

      9.     Granting the temporary injunctive relief requested by Petitioner will cause no undue hardship to Respondent.

      10.     In balancing the equities in this matter, if injunctive relief as requested is not granted, the harm to the employees involved herein, to the public interest, and to the purposes of the Act, would clearly outweigh any harm that the grant of such injunctive relief will work on Respondent.

      11.     Upon information and belief, it may fairly be anticipated that unless Respondent's conduct of the unfair labor practices described in paragraph 5 above is immediately enjoined and restrained, Respondent will continue to engage in those acts and conduct, or similar acts and conduct constituting unfair labor practices, during the proceedings before the Board and during any subsequent proceedings before a United States Court of Appeals, with the predictable result of continued interference with the rights of employees to engage in activities protected by Section 7 of the Act, with the result that employees will be deprived of their Section 7 rights under the Act, inter alia, to form, join, or assist a labor organization or to refrain from any and all such activities, employees will be denied their statutory right to freely express their choice as to representation or to be represented for collective-bargaining purposes by the Union, and the Union will be unable to ever obtain a fair election for certification as the collective-

bargaining representative of the Respondent's employees, all to the detriment of the policies of the Act, the public interest, the interest of the employees involved, and the interest of the Union.

12. Upon information and belief, to avoid the serious consequences set forth above, it is essential, just, proper, and appropriate for the purposes of effectuating the policies of the Act and the public interest, and avoiding substantial, irreparable, and immediate injury to such policies and interest, and in accordance with the purposes of Section 10(j) of the Act that, pending final disposition of the matters involved pending before the Board, Respondent be enjoined and restrained from the commission of the acts and conduct alleged above, similar acts and conduct or repetitions thereof, and be ordered to take the affirmative action set forth below in paragraph 2:

WHEREFORE, Petitioner prays:

1. That the Court issue an order directing Respondent to appear before this Court, at a time and place fixed by the Court, and show cause, if any, why an injunction should not issue directing, enjoining, and restraining Respondent, its officers, agents, servants, representatives, successors, and assigns, and all persons acting in concert with them, pending the final disposition of the matters herein pending before the Board, to cease and desist from:

(a) interrogating its employees about their Union activities and the Union activities of other employees;

(b) threatening its employees with discharge and refusal to assist them if they engage in Union and concerted activities;

11

        (c)    creating an impression among its employees that their Union and concerted activities are under surveillance by Respondent;

        (d)    engaging in surveillance of employees Union and concerted activities;

        (e)    threatening to refuse to assist employees because they had signed Union authorization cards;

        (f)    discharging or otherwise discriminating against employees in order to discourage membership in, or support for, or activities on behalf of, the United Food and Commercial Workers Union, Local No. 99, or any other labor organization;

        (g)    discharging or otherwise discriminating against employees for engaging in concerted activities protected by Section 7 of the Act.

        (h)    in any like or related manner interfering with, restraining, or coercing its employees in the exercise of their rights to self organization, to form labor organizations, to join or assist the Union or any other labor organization, to bargain collectively through representatives of their own choosing and to engage in other concerted activities for the purposes of collective bargaining or other mutual aid or protection, or to refrain from any and all such activities

    2.    That the Court require Respondent to take the following affirmative actions:

        (a)    Within five (5) days of the Court's issuance of an Order Granting Temporary Injunction (Injunction Order), offer, in writing, Martha Aguirre (Aguirre), Maria Morales (Morales), Silvia Romero (Romero), and Roberto Pena (Pena)

12

immediate reinstatement to their former jobs, or if those jobs no longer exist, to substantially equivalent positions of employment, without prejudice to their seniority or other rights or any other privileges previously enjoyed, displacing, if necessary, any newly hired or reassigned workers;

(b) Within fourteen (14) days of the Court's issuance of the Injunction Order, remove from its files, any and all records of its discharges of Aguirre, Morales, Romero, and Pena, and within three (3) days thereafter, notify Aguirre, Morales, Romero, and Pena, respectively, in writing that this was done, and that the material removed will not against them in any way;

(c) Within fourteen (14) days of the Court's issuance of the Injunction Order, post copies of the Injunction Order at Respondent's Phoenix facility, as well as translations of such an Order in languages other than English as necessary to ensure effective communication to Respondent's employees as determined by the Regional Director – translations are to be made at the Respondent's expense and approved by the Regional Director, said translations to be provided to Respondent by the Regional Director, in all places where notices to its employees are normally posted; maintain these postings during the pendency of the Board's administrative proceeding free from all obstructions and defacements; grant all employees free and unrestricted access to said postings; and grant to agents of the Board reasonable access to its facilities to monitor compliance with this posting requirement;

(d) In addition to physical posting of paper copies of the Injunction Order, distribute the Injunction Order electronically, such as by e-mail, posting on an

13

intranet site or an internet site, or other electronic means, if Respondent customarily communicates with its employees by such means. The electronic posting shall remain posted during the pendency of the Board's administrative proceedings. Respondent shall e-mail to the Regional Director, to the attention of Region 28's Compliance Officer, at Miguel.Rodriguez@nlrb.gov, a link to the electronic posting location on the same day as the posting. In the event that passwords or other log-on information are required to access the electronic posting, Respondent agrees to provide such access information to the Region's Compliance Officer. If the Notice is distributed via e-mail, Respondent will forward a copy of the e-mail distributed to the Region's Compliance Officer.

      (e)      Within ten (14) days of the Court's issuance of the Injunction Order, hold a meeting or meetings at which the Court's Order is to be read aloud by a responsible agent of the Respondent, and in the presence of an agent of the Board, or at Respondent's option by an agent of the Board in the presence of a responsible agent of the Respondent, to all employees employed by Respondent at Respondent's facility, including at multiple meetings and in other languages, if necessary as determined by the Regional Director – translations are to be made at the Respondent's expense and approved by the Regional Director, to ensure that it is read aloud to all employees; and

      (f)      Within (twenty-one) 21 days of the Court's issuance of the Injunction Order, submit to the Court and the Regional Director for Region 28 of the Board a sworn affidavit from a responsible agent of Respondent stating, with

14

specificity, the manner in which Respondent has complied with the terms of the Injunction Order.

    3.    That upon return of said Order to Show Cause, the Court issue an Order Granting Temporary Injunction enjoining and restraining Respondent in the manner set forth above.

    4.    That the Court grant such further and other relief as may be just and proper.

Dated at Phoenix, Arizona, this 15th day of November, 2013.

    /s/ Sandra L. Lyons
    Sandra L. Lyons, Esq.
    John T. Giannopoulos, Esq.
        On behalf of:
    Cornele A. Overstreet, Regional Director
    National Labor Relations Board, Region 28
    2600 N. Central Avenue, Suite 1400
    Phoenix, Arizona 85004