WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cornele A. Overstreet, | No. CV-13-02358-PHX-NVW |
| Petitioner, | **ORDER** |
| v. | |
| Farm Fresh Company Target One, LLC, | |
| Respondent. | |

Before the Court are Respondent Farm Fresh Company Target One LLC's Motion for Reconsideration (Doc. 51) and Petitioner Cornele A. Overstreet's Response (Doc. 53). Rules of Practice in the District of Arizona allow reconsideration on a showing of manifest error. *See* LRCiv 7.2(g)(1). Likewise, Federal Rule of Civil Procedure 60 allows the Court to relieve a party from an order for any reason that justifies relief. Because the August 11, 2014 Order denying fees erred in defining "prevailing party" too narrowly, the Court will grant the Motion and assess fees against Petitioner under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412.

As noted in the August 11 Order, a party prevails within the meaning of federal fee-shifting statutes if "(1) it secures a material alteration in the legal relationship of the parties and (2) that alteration is judicially sanctioned." *Poland v. Chertoff*, 494 F.3d 1174, 1186 (9th Cir. 2007) (citing *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 694 (2001)). Although the Supreme Court articulated this formulation for plaintiffs seeking fees, *see Buckhannon*, 532 U.S. at 600–01 (plaintiffs brought suit under

Fair Housing Amendments Act of 1988 and the Americans with Disabilities Act of 1990), the EAJA itself contemplates fee awards to private defendants.  *See* 28 U.S.C. § 2412(d)(1)(A) (allowing fee shifting in civil actions "brought by or against the United States"); *see also Ardestani v. INS*, 502 U.S. 129, 138 (1991) ("The clearly stated objective of the EAJA is to eliminate financial disincentives for those who would *defend* against unjustified governmental action and thereby to deter the unreasonable exercise of Government authority.") (emphasis added).

Nonetheless, the Supreme Court's material-alteration formulation fits awkwardly when a party successfully defends itself against the government rather than sues for affirmative relief.  Maintaining the status quo and *preventing* a material alteration of its legal relationship with the government may be a defendant's only goal.  The awkward fit is aggravated when the government wins part of the relief it seeks.  That was the case here.  Petitioner obtained injunctive relief because he demonstrated likely success on proving unfair labor practices, but the relief was limited.  The injunction did not require unconditional reinstatement as Petitioner requested.

Faced with EAJA precedent largely adapted to suit cases involving fee-seeking plaintiffs, *see, e.g.*, *Perez-Arellano v. Smith*, 279 F.3d 791 (9th Cir. 2002) (applying *Buckhannon*'s prevailing party formulation to the EAJA where plaintiff sued the INS seeking review of an adverse citizenship determination), this Court adopted a bright-line test, looking to whether Farm Fresh defeated a separate and distinct claim.  *See Hensley v. Eckerhart*, 461 U.S. 424, 434–36, 440 (1983).  Because the Court could not conclude that the differences between the remedy Petitioner obtained and the remedy Farm Fresh defeated were so great as to constitute a distinct claim, fees were denied.

In its Motion to Reconsider, however, Farm Fresh offers an approach that is more pragmatic and better suited to the EAJA's remedial aims.  Essentially, Farm Fresh argues that a defendant obtains sufficient relief to "prevail" if it wins a significant issue that provides some benefit—even if the government wins on other issues.

1    Farm Fresh cites to precedent with helpfully broad language. *See Buckhannon*, 532

2    U.S. at 604 ("A 'prevailing party' is one who has been awarded some relief by a court.");

3    *Hensley*, 461 U.S. at 433 ("A typical formulation is that plaintiffs may be considered

4    prevailing parties for attorneys' fees purposes if they succeed on any significant issue in

5    litigation which achieves some of the benefit the parties sought in bringing suit. This is a

6    generous formulation that brings the plaintiff only across the statutory threshold. It remains

7    for the district court to determine what fee is reasonable.") (citations and quotation marks

8    omitted); *Poland*, 494 F.3d at 1187 (finding actionable claim for retaliation and noting that if

9    plaintiff "obtains any form of relief on remand, he will have secured a material change in the

10   legal relationship between himself and [defendant]," entitling him to EAJA fees).

11    But it is an unpublished district court opinion from the Western District of Michigan

12   that persuasively applies Farm Fresh's test to similar facts. There, the NLRB similarly filed

13   a 10(j) petition for injunctive relief pending administrative adjudication of a company's

14   unfair labor practices. The company, CLS, had barred union representatives from its plant

15   and refused to bargain. The NLRB sought three forms of relief against CLS: (1) allow union

16   access to the plant, (2) bargain with the union, and (3) provide the union with information for

17   contract negotiations. The district court granted relief in part and denied it in part. The court

18   held that allowing the union access to CLS's plant would return the status quo before the

19   company refused to recognize the union. But the court determined that forcing CLS to

20   bargain with the union would go too far. It concluded:

21         As a result of its analysis, the Court finds that Petitioner has met his burden of
           establishing reasonable cause that an unfair labor practice has occurred. The
22         Court further finds that it is just and proper to issue a limited preliminary
           injunction requiring CLS to allow [union] representatives access to their
23         employees and plant to process grievances and represent employees. . . .
           However, the Court does not find it just and proper to require CLS to bargain
24         with the [union] or provide information for contract negotiations. Nor will
           dues have to be paid to the [union]; these dues may be kept in escrow until the
25         NLRB issues its [administrative] decision.
26

27   *Boren v. Cont'l Linen Servs., Inc.*, 1:10-CV-562, 2010 WL 2901872, at *1, *6 (W.D. Mich.

28   July 23, 2010).

- 3 -

1    Subsequently, an ALJ concluded that the union was not the employees' representative
2    and recommended dismissing the administrative complaint.  The district court dismissed the
3    10(j) petition with prejudice pursuant to a stipulation.  CLS moved for fees.  The NLRB
4    opposed and made the same argument made here: Because the government obtained some
5    injunctive relief, the respondent company did not prevail within the meaning of the EAJA.
6    The court rejected this argument because CLS's success "was not insignificant.  These issues
7    were central to the NLRB's 10(j) petition.  CLS prevented Plaintiff from obtaining a material
8    alteration in the legal relationship of the parties."  *Boren ex rel. NLRB v. Cont'l Linen Servs.,*
9    *Inc.*, 1:10-CV-562, 2011 WL 2261537, at *1–2 (W.D. Mich. June 8, 2011).  The court
10   expressly disclaimed the voluntary dismissal as justification for the fee award and relied
11   instead on CLS's success defending against the 10(j) petition.  *See id.* at *2 n.4.

12   The district court's analysis turns on a sensible interpretation of *Buckhannon* when
13   the fee claimant is a defendant.  If a party prevails by winning a judicially sanctioned
14   material alteration in the legal relationship, then *defeating* such an alteration must also be
15   sufficient.  To interpret "prevailing party" otherwise would read into the EAJA a bias against
16   defendants.  It would ignore the Supreme Court's admonition that the EAJA must be "read in
17   light of its purpose to diminish the deterrent effect of seeking review of, or defending against,
18   governmental action."  *Sullivan v. Hudson*, 490 U.S. 877, 890 (1989) (quotation marks
19   omitted).[1]

20   Admittedly, this approach invites difficult line drawing in certain cases.  Where a
21   non-governmental defendant prevails on some issues but not others, a fee award must turn on
22   principled comparison of the parties' relative success.  Only substantial victory will merit
23   fees.  *See Hensley*, 461 U.S. at 433 (requiring success on "any *significant* issue in litigation")
24   (emphasis added); *Cont'l Web Press, Inc. v. NLRB*, 767 F.2d 321, 323 (7th Cir. 1985) ("[A]

25   ───────────────
26   [1] Two years after *Sullivan*, the Supreme Court declined to expand application of the EAJA through a "functional interpretation" that would serve its broad purposes. *Ardestani v. INS*, 502 U.S. 129, 137–38 (1991).  But unlike here, the *Ardestani* plaintiff
27   sought an interpretation of the EAJA at odds with its plain language.  *See id.* at 138 ("[W]e cannot extend the EAJA to administrative deportation proceedings when the plain
28   language of the statute, coupled with the strict construction of waivers of sovereign immunity, constrain us to do otherwise.").

- 4 -

party 'prevails' if he wins a substantial part of what he sought."), *abrogated on other grounds by Jean*, 496 U.S. 154.  Thus, only where the defendant defeats an attempt to materially alter the legal relationship, and the defeat is substantial, may a defendant obtain fees against a governmental entity that nonetheless obtained some of the success it sought.[2]

Petitioner does not cite to Ninth Circuit authority foreclosing this test.  Indeed, rather than disputing the *Boren* approach, Petitioner distinguishes it by minimizing Farm Fresh's victory.  Like *Boren*, Petitioner demonstrated likely success at proving unfair labor practices and obtained limited injunctive relief.  But also like *Boren,* the terms of relief Petitioner sought went too far.  It would not have been just and proper to order reinstatement on Petitioner's terms.  As discussed below, it would have been *un*just.  Farm Fresh's success, like CLS's, was significant because unconditional reinstatement was central to the 10(j) petition.  Even though the government obtained relief, Farm Fresh's victory was substantial enough to make it a prevailing party.

Thus, Farm Fresh is entitled to its fees if "the government fails to show that its position was substantially justified or that special circumstances make an award unjust" and "the requested fees and costs are reasonable."  *Carbonell v. INS*, 429 F.3d 894, 898 (9th Cir. 2005).  "Substantial justification under the EAJA means that the government's position must have a reasonable basis in law and fact.  Substantial justification does not mean justified to a high degree, but simply entails that the government must show that its position meets the traditional reasonableness standard."  *Corbin v. Apfel*, 149 F.3d 1051, 1052 (9th Cir. 1998) (citations and quotation marks omitted).

Here the government's position was not reasonable.  As stated in the Court's March 6 2014 Order granting in part and denying in part the 10(j) petition,

> Petitioner's demand that the discharged employees be reinstated and be exempt from Respondent's verification of their legal status under E-Verify is contrary to law . . . .  Respondent has offered since May 2013 to reinstate the

---

[2] Of course, prevailing party status is only a threshold inquiry.  The government is exposed to fee awards only for litigation that is not substantially justified.  This protection ensures that adopting the *Boren* approach will not chill the government's legitimate enforcement attempts.

1    employees, subject to their passing E-Verify, which would have been done by
2    now but for Petitioner's illegal additional demand that they be retained even if
3    they are not confirmed by E-Verify.

Doc. 36 at 1–2.

4        Opposing Farm Fresh's initial fee request, Petitioner argued he "*never* demanded that
5    the Company refrain from E-Verifying those individuals once they had been reinstated."
6    Doc. 45 at 6.  This revisionist history contradicts the record as articulated in the March 6
7    Order.  Farm Fresh and the Court reasonably understood Petitioner to demand reinstatement
8    without subsequent confirmation through E-Verify.  At oral argument on the 10(j) petition,
9    counsel for Petitioner was given the opportunity but declined to retract that position.

10       Petitioner's demand contravened Arizona law.  A.R.S. § 23-214(A) (mandating that
11   "every employer, after hiring an employee, shall verify the employment eligibility of the
12   employee through the e-verify program").  It also foreclosed a remedy that was consistent
13   with Supreme Court precedent.  *Cf. Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 902–03 (1984)
14   ("[T]he implementation of the Board's traditional remedies at the compliance proceedings
15   must be conditioned upon the employees' legal readmittance to the United States. . . . By
16   conditioning the offers of reinstatement on the employees' legal reentry, a potential conflict
17   with the INA is thus avoided.").  It was not substantially justified.  *See Meinhold v. U.S.*
18   *Dep't of Defense*, 123 F.3d 1275, 1278 (9th Cir. 1997) ("If the government's position
19   violates the Constitution, a statute, or its own regulations, a finding that the government was
20   substantially justified would be an abuse of discretion.").  Because there are no "special
21   circumstances mak[ing] an award unjust," 28 U.S.C. § 2412(d)(1)(A), Farm Fresh is entitled
22   to EAJA fees.

23       However, the Court does not make a finding as to bad faith and will not grant fees
24   under 28 U.S.C. § 1927 or its inherent authority.  Farm Fresh's fee award is awarded only
25   under and thus constrained by the EAJA, including its statutory hourly maximum rate.  *See*
26   28 U.S.C. § 2412(d)(2)(A).  Moreover, Farm Fresh's request, seeking 95 percent of its
27   discounted fees, was not reasonable.  Farm Fresh is entitled to fees expended on the
28   reinstatement issue even if those fees also went to losing battles.  But it does not get fees

- 6 -

1   expended only on issues lost.  Farm Fresh will therefore be ordered to resubmit its fee

2   application, itemizing and subtracting time not expended on defending against Petitioner's

3   reinstatement demand.  Further, Farm Fresh must calculate its requested fees using the

4   current statutory maximum allowed under the EAJA.  Petitioner may object that any time

5   included in the calculation was pertinent only to the issues decided favorably to the

6   government.

7       IT IS THEREFORE ORDERED granting Respondent Farm Fresh Company Target

8   One LLC's Motion for Reconsideration (Doc. 51).  The Order of August 11, 2014, is vacated

9   (Doc. 50).

10      IT IS FURTHER ORDERED that Respondent shall resubmit its fee application by

11  September 19, 2014.  Petitioner may file an objection by October 3, 2014.

12      Dated this 4th day of September, 2014.

13

14

15  _____

16              Neil V. Wake
          United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28

- 7 -